## UNITED STATES v. SAUER.

(District Court, W. D. Michigan, S. D. June 18, 1898.)

1. ILLEGAL USE OF MAILS—SCHEMES TO DEFRAUD—LOTTERY SCHEMES.

Rev. St. § 5480, is general in character, and makes it a criminal offense to use the mails for promoting schemes to defraud in general; and the amendment of March 2, 1889, only alters its scope by adding a certain class of cases particularly described therein. Section 3894, notwithstanding some general language therein, is specific, and designed to punish the use of the mails for promoting lottery schemes; and the amendment of September 19, 1890, merely makes further and specific provisions and amendments, without changing its scope. An indictment, therefore, for using the mails to defraud, not by any lottery scheme, is referable to sec-

tion 5480, and is to be determined under that section, without reference to the terms of section 3894.

**2. SAME—VENUE OF OFFENSE.**

A prosecution under Rev. St. § 5480, prohibiting the use of the post office for promoting a scheme to defraud, can only be instituted in the district in which the fraudulent matter was placed in the post office.

This matter arose upon an application for an order of removal founded on an indictment and bench warrant from the district court for the Eastern district of Pennsylvania.

George G. Covell, U. S. Atty., and Dwight Goss, Asst. U. S. Atty., for plaintiff.

Bondeman & Adams, for defendant.

SEVERENS, District Judge. The only question with which I shall have to deal is whether, upon reading the indictment and warrant shown as the ground of removal, it appears that the offense charged is triable in the Eastern district of Pennsylvania. If the court there has no jurisdiction of the offense because it was not committed in that district, the order for removal cannot properly be made. There are found in the Revised Statutes of the United States two provisions relating to the general subject of the use of the postal facilities of the United States for the purpose of promoting fraudulent schemes. One of these provisions is found in section 5480, which is framed for the purpose of constituting as a criminal offense the placing or causing to be placed in the post office material which might be otherwise mailable, for the purpose of promoting a scheme previously concocted to defraud some person or persons. That was a statute of a general character. There was at the same time another (section 3894), which in substance was a provision against the use of the mails of the United States for the purpose of promoting "lottery schemes," generally so termed. A fundamental rule of construction requires us to give such an interpretation to each of these several provisions as shall give place for the other to have effect. As I said, section 5480 is a general statute. Section 3894 is a statute designed for the specific purpose of prohibiting the use of the mails for promoting lottery schemes. It is true that in section 3894 there is some general language, such as this: "Or concerning schemes devised for the purpose of obtaining money or property under false pretenses." Now, that language is general in its form; but, upon the application of two maxims, it is to be restricted in its application so as to apply to schemes of the character designated in that section (3894), because, if it were construed broadly and according to the wide import of its terms, without restriction, it would cover the subject-matter of section 5480. This would be to violate the rule which I have adverted to; of so construing each part of the statutes as that every other bearing upon a kindred subject may have its due effect. And it would also be in disregard of another maxim of construction, which is that, where general words are used in connection with particular words, the general words are to be restricted in their signification so as to include only others of the same class or character as those which are specifically desig-

nated in the section and particular language in which the general language is found. Now, taking these propositions for our starting place,—i. e. that section 5480, as found in the Revised Statutes, was designed to apply to cases of the general character therein described, and that section 3894 was designed to apply to schemes in the nature of lottery enterprises,—we will follow up those two sections of the statutes and the amendments to them respectively.

Section 5480 was amended March 2, 1889, by including within the general terms of the section, as it had before stood, certain other particular descriptions of fraud. If the whole of this language as it now stands had been then originally enacted, there might have been room for the application of one of the maxims above mentioned, viz. that general language should be restricted to a similar meaning to that of the specific and particular language or provisions in the section. But there are other considerations. This section, which is amended, was a section which had been enacted prior to the date of this act, and this amendment professes upon its face to be an amendment of the old section; and the rule is that an amendment is not to be regarded as annulling the provisions of the section to be amended any further than is necessary to give the amendment due scope and effect. The conclusion to be reached in the construction of section 5480 is that it was no further amended or altered in its scope than to add a certain class of cases which are particularly described in the amending matter. Turning to the act of September 19, 1890, upon which the district attorney has placed some reliance, it is found that that also is simply an amendment of section 3894, being the section theretofore contained in the Revised Statutes leveled at the use of the mails for lottery schemes; and it goes on to make some further and specific provisions and amendments to the statute as it formerly stood. That statute is very different as it stands amended from the statute section 5480 as amended, and the two sections or provisions stand on entirely independent grounds. Now, this indictment seems to have been framed upon the supposition that the case which is attempted to be stated under it was a case which would fall under section 3894 as amended; but, for the reasons which I have given, I am very clearly of opinion that this is not the section which is applicable to the class of cases in which the case attempted to be described in this indictment is included. So, it will not be permissible to refer to the general language of section 3894 as amended, above quoted, this not being a matter relating to any lottery scheme, or having any similitude to a lottery scheme, and very clearly falling under the provisions of section 5480, as amended by the act of March 2, 1889.

Now, it seems to me that—starting from the root of the matter, as we have done, and considering, as we must, that congress, when it made up this revision of the statutes, could not possibly have intended to make two distinct provisions in reference to the same subject-matter, but must be supposed to have intended these several provisions to relate to the distinct classes within which the cases might be included, and taking up the amendments, and show-

ing, as I think is clearly done, that each of the amendments is an amendment, and an amendment only, of the particular statute which in its caption and title it professes to be an amendment of—neither of these two branches becomes merged in the other, but that each one moves off separately, and has continued down to this time separate from the other.

Now, if this is so, and this case is not of a class or character included within the statute leveled at lottery schemes, the only remaining question is to inquire and determine whether or not the case can be tried in the district to which the letter, packet, or writing is addressed, and where it is delivered. In order to settle that matter, we must have regard to the language of section 5480 as amended. That statute, after having referred to the formation of the scheme to defraud, then goes on to enact the gist of the offense in these words: "Shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet or advertisement in any post-office, branch post office, or street or hotel letter-box of the United States, to be sent or delivered by the said post-office establishment. * * *" I think that the words "to be sent or delivered by the said post-office establishment" refer to the purpose with which the supposed letter or packet is to be placed in the post office, and denote that it is not sufficient that a letter is simply placed in the post office, but that it must be done for the purpose of being transmitted; the words "to be sent or delivered by the said post-office establishment" being employed for the purpose of denoting the intent or general purpose for which the letter is placed in the post office. I think the conclusion is inevitable that the offense is committed by the placing of the letter in the post office, and that it is completed at the time when it is placed there for the purpose of being transmitted. The lottery statute contains a provision making it a penal offense not only to place the prohibited matter in the post office to be sent, but also makes it a penal offense to send the matter,—that is, cause it to be transmitted,—and also makes it a penal offense to deliver such matter, or cause it to be delivered, at the end of its transit. Well, now, it seems to me obvious that if the prohibition against putting the letter or packet relating to the lottery scheme into the post office did ipso facto include not only that, but the sending and the delivering of the letter at the end of the line, the second and third provisions of the lottery statute would be useless. In short, it appears to me that it is not consistent with the rules of construction which relate to the interpretation of statutes creating criminal offenses to enlarge and extend these words in section 5480 beyond their ordinary plain, natural import; and especially is this course to be required of the court when, turning to a kindred statute, we see that in the cases there provided for, for reasons best known to the legislative department which enacted them, there is also a provision, in addition to the placing of the letter in the post office, making subsequent action in the course of the transmission and delivery of such letters penal. For these reasons, my opinion is that the offense which is attempted to be set out in this indictment is one which could only be prosecuted, under the

constitutional provision in that regard, in the proper district in the state of Illinois from which this fraudulent matter was transmitted,—where it was placed in the post office.

It might not be out of place to say that this indictment, in charging the gist of the offense, says: "So devising and intending in and for executing such scheme and artifice to defraud, and for the obtaining of money under false pretenses, and attempting so to do, cause to be conveyed and delivered by mail, in the district aforesaid." Now, I think, there is grave room for doubt as to whether that language is sufficient to charge as a penal offense the placing of the mail in the post office. It would seem to me language more appropriately fitted to charge the second and third of the offenses contained in the lottery act; i. e. the sending, which is the second, and delivering, which is the third. But it is not necessary, as I think, for me to express a definite opinion upon that. It is hardly necessary to point out the distinction between the character of cases that we are dealing with and the case of an extradition by the governor of one state upon the requisition of the governor of another state in which the offense is committed. No doubt, where goods are obtained by fraudulent pretenses which are initiated in another state, and they produce their effect in the state in question, the matter might fall under the general doctrine that where an offense is committed in part in one state, and in part in another, the case may be prosecuted in either jurisdiction. But what we have to deal with is simply a federal statute, and not one relating to common-law offenses, or the practice growing out of state prosecutions, and the reclamation of fugitives from justice upon the demand of the governor of one state upon the governor of another.

For these reasons, I think, the order of removal must be denied, and the respondent discharged.