**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alessandro MONCINI, aka: Sandro
Moncini, Defendant-Appellant.**

**No. 88–5286.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 1989.

Decided Aug. 11, 1989.

Stanley I. Greenberg, Los Angeles, Cal., for defendant-appellant.

Harriet M. Rolnick, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, NELSON and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Alessandro Moncini, a citizen and resident of Italy, appeals his conviction under 18 U.S.C. § 2252(a) for mailing child pornography from Italy to an undercover officer in the United States. He raises three issues on appeal: (1) whether the district court lacked jurisdiction over him; (2) whether the government should have been required to prove that he knew he was violating American law, or, in the alternative, whether the district court should have recognized ignorance of the law as an affirmative defense; and (3) whether the district court erred in finding that he was not entrapped. We affirm.

## FACTS

Moncini was contacted by Detective William H. Dworin of the Los Angeles Police Department after Dworin discovered Moncini's name and address in a search of an American pornography collector. Dworin sent Moncini a letter containing a photograph of a nude girl, inquiring whether Moncini would be interested in trading child pornography. Dworin led Moncini to believe the American pornography collector was a mutual acquaintance.

Moncini wrote back and asked for more pictures. Dworin complied, but Moncini did not reciprocate by sending similar pictures in return. Dworin eventually asked Moncini to send him some child pornogra-

phy, offering to send Moncini more explicit material if Moncini would send him child pornography to prove his involvement "with the young ones." Moncini responded by sending some pages torn from a commercially sold pornography magazine. He subsequently mailed additional pictures and a videotape. Moncini concedes that these pictures and videotape were child pornography of the type proscribed by 18 U.S.C. § 2252.

Moncini was arrested when he arrived in New York in early 1988. He was tried in the Central District of California, which includes Valencia, the place to which the photos were sent. His motion to dismiss the indictment for lack of jurisdiction was denied on the ground that the mailings were continuing offenses which continued to take place as Moncini's letters traveled from Italy to California, giving the court territorial jurisdiction. Alternately, the court found that extraterritorial jurisdiction would be proper.

Moncini waived jury trial. His principal defense was ignorance of the law. The district court received uncontroverted evidence in the form of an affidavit by a former member of the Italian bar that the mailing of child pornography is legal in Italy so long as it is not for commercial purposes or purposes of public display. Moncini asserts that he was unaware that his mailing of child pornography was a crime in the United States. The court convicted him and sentenced him to a year-and-a-day custodial sentence. He has completed his sentence and is now at liberty.

## ANALYSIS

### A. *Jurisdiction*

■ The propriety of the exercise of jurisdiction is a question of law which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc). The government argues two possible bases for jurisdiction over Moncini. Jurisdiction is proper if the offense, or part of the offense, occurred within the United States. *See Rocha v. United States*, 288 F.2d 545, 547 (9th Cir.1961). Alternately, jurisdiction may be proper even if no part of the offense occurred in the United States, if grounds for exercising extraterritorial jurisdiction are present. *Id.* at 548. We agree with the government that Moncini's mailing of child pornography was a continuing offense, so that part of the offense was committed in the United States as his letters traveled through the mail and were delivered to their destination, and reject Moncini's argument that the crime was complete at the time the letter was deposited in the mail in Italy. We do not reach the parties' arguments concerning the extraterritorial scope of the child pornography laws.

The government's argument is based on the interaction of two statutory provisions. 18 U.S.C. § 2252(a) (Supp. V 1987), the substantive penal law under which Moncini was indicted, refers to:

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce or mails, any visual depiction [as defined by the statute] ...

18 U.S.C. § 3237(a) (Supp. V 1987), a venue provision of general applicability, provides in part:

Any offense involving the use of the mails ... is a continuing offense and, except as otherwise expressly provided ..., may be ... prosecuted in any district from, through, or into which such ... mail matter ... moves.

Section 3237(a) may be used to establish venue under § 2252. *United States v. Langford*, 688 F.2d 1088, 1094 (7th Cir. 1982).[1] Moncini argues that § 3237(a) defines continuing offenses *solely* for the purpose of establishing venue, and is therefore irrelevant to the threshold question of whether there is federal jurisdiction. This argument ignores the conjunctive structure of the statute. The first clause of the second paragraph of § 3237(a) clearly states that "[a]ny offense involving the use

---

1. Although § 2252 was amended after the decision in *Langford, see* Pub.L. 98–292, § 4, 98 Stat. 204 (1984), the language in reference to the mailing requirement was retained unchanged.

of the mails ... is a continuing offense." To hold that the use of the mails is a continuing offense for purposes of venue but not jurisdiction would require the illogical conclusion that the act, of mailing prohibited material could be deemed to occur in districts through which the letter passes without also occurring within the United States.

Moncini asserts that where federal jurisdiction is based on the use of the mails, the act of mailing completes the crime. However, whether this is the case depends on the precise wording of the particular statute. For example, *United States v. Ross*, 205 F.2d 619 (10th Cir.1953), on which Moncini relies, arose under a statute requiring that the defendant "knowingly deposit[ ] for mailing or delivery...." *Ross*, 205 F.2d at 620 (construing 18 U.S.C. § 1461). *Ross* held that under § 1461 the offense was complete at the time of deposit, so that there was no jurisdiction in the district where the letter was delivered. *Id.*[2]

We conclude that Moncini's deposit of mail in Italy, intended for delivery to the United States, resulted in acts within the territory of the United States when the mail entered and traveled within the United States, so that the district court's exercise of territorial jurisdiction was proper.

**B. Mens Rea**

Moncini argues that the statutory language "[a]ny person who ... *knowingly* ... mails[ ] any visual depiction," 18 U.S.C. § 2252(a) (emphasis added), requires the government to prove that he knew his mailings were illegal under federal law. In the alternative, Moncini argues that the failure to require such proof of *mens rea* violates due process. We review these legal claims *de novo. McConney*, 728 F.2d at 1201.

**1. Statutory Mens Rea**

Section 2252(a) requires that the government prove that the defendant had knowledge of the nature of the contents of the visual depictions and that the depictions were to be transported or shipped in interstate or foreign commerce or mailed. *See United States v. Brown*, 862 F.2d 1033, 1036 (3d Cir.1988) (recipient must know that material received is child pornography, but need not know precise contents of material); *United States v. Marchant*, 803 F.2d 174, 176–77 (5th Cir.1986) (same); *United States v. Esch,* 832 F.2d 531, 540 (10th Cir.1987) (construing § 2251; knowledge that material was to be mailed), *cert. denied,* — U.S. —, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). Attempts to expand on this knowledge requirement have consistently failed. *See, e.g., United States v. Kleiner*, 663 F.Supp. 43 (S.D.Fla.1987) (no need to prove defendant knew age of individuals depicted)[3]; *United States v. Tolczeki*, 614 F.Supp. 1424, 1429 (N.D. Ohio 1985) (no need to prove knowledge of illegality). We agree with the government that there is no basis for reading such a *mens rea* requirement into § 2252.

Moncini bases his statutory interpretation argument on cases construing the word "knowingly" under other statutes. However, what these statutes have in common, and what serves to distinguish them from § 2252(a), is that they all incorporate knowledge of illegality as an element of the offense. Under these statutes, the illegality is a fact of which the defendant must be aware to have the necessary *mens rea*.

For example, 31 U.S.C. § 1101 (1976), construed in *United States v. Granda*, 565 F.2d 922 (5th Cir.1978), required any person who "knowingly" brought over $5,000 into this country to fill out a certain form; another statute, 31 U.S.C. § 1058 (1976),

---

**2.** Significantly, § 1461 was subsequently amended to refer to "[w]hoever knowingly uses the mails," specifically so that offenses under that section would fall within § 3237. *See Reed Enterprises v. Clark*, 278 F.Supp. 372, 374 (D.D.C.1967), *aff'd mem.*, 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28 (1968).

**3.** Although § 2252(a) does not itself require proof that the defendant knew the age of the minor, we have held, in the context of interpreting § 2251, that the first amendment requires that defendants be entitled to establish mistake of age as an affirmative defense. *United States v. United States Dist. Court*, 858 F.2d 534 (9th Cir.1988).

made it a crime "willfully" to fail to fill out this form.[4] The court held that conviction under these statutes requires proof that the defendant knew of the reporting requirement. *Granda*, 565 F.2d at 926.

The decisions in *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), and *United States v. Pollard*, 724 F.2d 1438 (6th Cir.1984) (per curiam), are similarly distinguishable. Those cases construed 7 U.S.C. § 2024(b), which makes it a crime to "knowingly ... acquire[ ] [food stamps] ... in any manner not authorized by [law]." Under § 2024(b), the illegality of the acquisition is itself an element of the crime, and the word "knowingly" as used in that statute can logically be interpreted to refer to knowledge of that illegality. *See Liparota*, 471 U.S. at 424 & n. 7, 105 S.Ct. at 2087 & n. 7. However, as *Liparota* makes clear, § 2024(b) does not include a general "mistake of law" defense, under which a defendant could claim that he did not know it was illegal to acquire food stamps in an unauthorized manner. *Id.* at 425 n. 9, 105 S.Ct. at 2088 n. 9. As an additional example, *Liparota* notes that it is a defense to a charge of receiving stolen goods that one did not know the goods were stolen, even though this mistake might hinge on a mistake of law;[5] by contrast, it is not a defense that one did not know that receipt of stolen goods is illegal. *Id.*

The crucial difference between 7 U.S.C. § 2024(b) and 18 U.S.C. § 2252 is that the language of the former contains a genuine problem of grammatical scope: the adverb "knowingly" in § 2024(b) could conceivably modify "acquire" alone, or "acquire" in conjunction with "in any manner not authorized [by law]." *Liparota*, 471 U.S. at 424 n. 7, 105 S.Ct. at 2087 n. 7. By contrast, the word "knowingly" in § 2252(a) can at most be construed to modify "mails" in conjunction with "any visual depiction [as defined by the statute]." Thus, the government must prove that the defendant had knowledge of the contents of the visual depictions and knowledge that they were to be mailed, but there is simply no reference to illegality in § 2252 which the word "knowingly" could similarly be construed to modify.

### 2. Constitutional Limitations

■ Moncini argues that without a mistake of law defense, § 2252(a) is unconstitutional as applied to him, a foreigner, for acts committed in his own country and legal there, where there is no provision in the statute to give him notice that his conduct could result in criminal sanctions in the United States. In other words, Moncini argues that the due process clause imposes limitations on the applicability of the maxim, "ignorance of the law is no excuse."

Where the defendant had whatever mental state was required for the commission of the crime and only claims that he was unaware that his conduct was proscribed by the criminal law, a mistake of law defense is seldom recognized. *See United States v. Sherbondy*, 865 F.2d 996, 1002 (9th Cir.1988) ("[T]here are few exceptions to the rule that ignorance of the law is no excuse."); *United States v. Fierros*, 692 F.2d 1291, 1294 (9th Cir.1982). *See also* 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(d), at 585–89 (1986).

We do not find this to be an appropriate case in which to recognize an exception. Even assuming Moncini was ignorant of the law as he claims, he must bear the risk of the potential illegality of his conduct.

---

4. These provisions have been recodified. *See* 31 U.S.C. § 5316(a) (raising amount to $10,000) (1982 & Supp. V 1987); 31 U.S.C. § 5322 (Supp. V 1987).

5. To similar effect is *United States v. Hollinshead*, 495 F.2d 1154 (9th Cir.1974), also cited by Moncini. There, defendants acquired Mayan artifacts in Guatemala and transported them into the United States. Guatemalan law makes it illegal to take such artifacts out of Guatemala. Since Guatemalan law therefore determined whether the artifacts were "stolen" property for purposes of a charge of transporting stolen property, the government had to prove that defendants knew enough Guatemalan law to know the artifacts could not be taken out of Guatemala.

*Cf. United States v. Hale,* 784 F.2d 1465, 1471 (9th Cir.1986) (no defense to charge under § 2252 that defendant believed materials to be legally receivable when they were delivered to him after inspection by Customs officials). The child pornography laws are directly related to a commonly understood moral censure. The very nature of child pornography, which is commonly regulated throughout the world, should cause a reasonable person to investigate the laws of the United States before sending such material into this country. *See United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971). This is not a case where due process prohibits convicting a defendant who has unwittingly broken the law through conduct which an ordinary person would not assume to be at least potentially criminal. *See Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957);[6] *see also* 1 W. LaFave & A. Scott, *supra,* at 588.

## C. *Entrapment*

 Moncini argues that even though he was admittedly predisposed to send and receive child pornography, he was not predisposed to commit the crime of mailing such materials in violation of federal law. Thus, his entrapment argument is inherently dependent on his ignorance-of-law argument. Because knowledge of the illegality of mailing child pornography is not an element of the offense, there is no basis for an entrapment argument. To prove entrapment, a defendant must show that he was induced to commit the crime by a government agent and that he was not predisposed to commit the crime. *United*

*States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986). Moncini's conceded predisposition to mail child pornography is dispositive. The district court did not err in rejecting Moncini's entrapment defense.

## CONCLUSION

18 U.S.C. § 3237 provides for territorial jurisdiction over crimes involving the mails when the mailed material travels into the United States. Conviction under 18 U.S.C. § 2252 does not require proof that the defendant knew his conduct was illegal. Because Moncini admitted to being predisposed to mail child pornography, the district court did not err in rejecting his entrapment defense.

We note that a $200 special assessment was imposed on Moncini under 18 U.S.C. § 3013. In *United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988), we held this statute to have been enacted unconstitutionally in violation of the origination clause. Accordingly, we vacate the assessment. *See United States v. Anguiano,* 873 F.2d 1314, 1321 (9th Cir.1989). Moncini's conviction is in all other respects AFFIRMED.

---

**6.** In *Lambert,* a municipal ordinance made it illegal for a convicted felon to remain in Los Angeles for more than five days without registering. The Court held that this ordinance violated due process when applied to a person without actual knowledge of the registration requirement, where there was also no showing of the probability of such knowledge. 355 U.S. at 229–30, 78 S.Ct. at 243–44. The Court emphasized that the crime of failing to register was "wholly passive," *id.* at 228, 78 S.Ct. at 242, and

that "circumstances which might move one to inquire as to the necessity of registration are completely lacking." *Id.* at 229, 78 S.Ct. at 243.

In *Freed,* a federal statute required the registration of hand grenades. The Court upheld this law despite the fact that the statute did not require knowledge of the registration requirement, noting that "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." 401 U.S. at 609, 91 S.Ct. at 1118.